# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LONDON COLLINS,

    Plaintiff,

  v.

SET ENTERPRISES, INC.,

    Defendant.

No. 11 C 2994

## MEMORANDUM OPINION AND ORDER

Plaintiff London Collins ("Collins"), who is African American, brought suit against his former employer, SET Enterprises, Inc., alleging racial discrimination and a hostile work environment. SET moved for summary judgment, and Collins failed to address its arguments in support of dismissal of the hostile work environment claim, effectively abandoning that claim. As to the racial discrimination claim, however, I find that genuine issues of material fact preclude summary judgment, and SET's motion is denied.

I.

As a preliminary matter, SET moves to strike two affidavits submitted by Collins in response to its motion for summary judgment, one by Darrall Horns[1] ("Horns") and one by Chadwick Fulwiley ("Fulwiley"). SET asserts that neither witness was

---

[1] Plaintiff refers to the witness as "Darrall Horn" but as he signed his name "Horns" on his affidavit, so I will refer to him by the latter spelling.

properly disclosed, and that the affidavits are conclusory. As to the latter objection, SET takes issue with the level of detail provided in the affidavits, but this is not a basis for striking them, given that they are clearly based on personal knowledge and set forth facts that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(4). The more serious question is whether Collins sufficiently disclosed the existence of these witnesses and the scope of their proposed testimony.

Both Fulwiley and Horns are former co-workers of Collins. In his affidavit, dated June 28, 2012, Horns asserts that he was employed by SET at its Sauk Village facility from August 2006 to August 2009. He worked as a machine operator during the time Eleanor Mulcahy ("Mulcahy") was general manager of the facility. It is undisputed that Mulcahy was the decisionmaker who fired Collins.

Horns described an incident that occurred sometime between March 2007 and Collins' termination in December 2007 in which the line went down several times in one day due to problems with a piece of machinery called a stacker. Mulcahy approached Horns and Collins while they were examining the machine and began yelling at them because the machine was down. Horns attests that he heard Mulcahy say to Collins: "You niggers act like you all don't know how to run a machine." Collins replied: "Why do I got to be a nigger?" Mulcahy did not respond, but demanded to know

2

if Collins had called maintenance.

Horns additionally asserted that up to the time Collins was terminated, it was common for SET's hourly employees to leave the premises to go to the union hall. Horns averred that he did so on more than five occasions, although he could not remember the dates. On three occasions, he left while still on the clock, and this occurred while Mulcahy was general manager. Horns observed a number of employees leave SET to go to the union hall without clocking out. On Dec. 9, 2007, Horns left SET with Collins to go to the union hall. Their supervisor, Donald Bryant ("Bryant"), saw them leave, and neither of them clocked out. Collins and Horns drove to the union hall, attended a 10-minute meeting regarding contract negotiations, and then returned to SET.

Fulwiley was a machine operator at SET from 2006 to May 2008. In his affidavit, also dated June 28, 2012, Fulwiley stated that in October or November of 2007, he was present when Mulcahy approached Collins while they were clocking out, put her index finger in his face, and said, "Your black ass won't be working here much longer." Collins did not respond. Fulwiley and Collins then went to the union hall, where they reported Mulcahy's statement to Bill Jackson, the union president. Fulwiley added that at the time Collins was terminated, it was common practice for hourly employees to leave SET to go to the union hall without clocking out. Fulwiley named several

3

employees who did this, and said he personally saw employees leave to go to the union hall without clocking out.

Additionally, Fulwiley averred that in January of 2008, he saw Roger Fowler ("Fowler") walk into the building without clocking in and with a McDonald's bag in his hand. He reported this to Mulcahy, who told him that Fowler would be punished. After not seeing Fowler for two days, Fulwiley observed Fowler returning to work. He informed Collins of this.

In his initial disclosures, Collins identified Horns as someone who:

> is believed to have knowledge including but not limited to the nature and quality of Plaintiff's work during the course of Plaintiff's employment with Defendant, instances of discrimination against Plaintiff as alleged in Plaintiff's Complaint at Law; and facts and circumstances surrounding the termination of Plaintiff's employment with Defendant, as he is aware of them.

In its interrogatories, SET sought additional information, including the subject matter of the information possessed by each witness and "the substance of any opinions and facts possessed by each person." Collins responded by referring SET to his initial disclosures. Collins did not identify Fulwiley in either his initial disclosures or in his responses to interrogatories.

In his deposition, conducted on Dec. 22, 2011, Collins testified that Horns and Fulwiley witnessed Mulcahy calling him a "nigger." Collins said that he had spoken to both Horns and Fulwiley about being witnesses in the case. Collins also

testified that Fulwiley reported Fowler to Mulcahy for going to lunch without clocking out.

Under Fed. R. Civ. P 26(a)(1)(A), a party must disclose "the name and, if known, the address and telephone number of each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses . . . identifying the subjects of the information." Rule 26(e) imposes a duty to seasonably supplement these initial disclosures when a party acquires additional relevant information. *See Seddon v. Maytag Corp*., No. 04-CV-4058-JPG, 2005 WL 2030629, at *2 (S.D. Ill. Aug. 23, 2005). Rule 37 provides that a party that fails to provide information or identify a witness as required by Rule 26(a) or 26(e) "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). SET argues this rule is applicable in the instant case, and both Fulwiley's and Horns' affidavits should be stricken.

Collins asserts that his disclosures were acceptable because Collins identified Horns and the general subject matter of his testimony in his initial disclosures and because he identified Fulwiley in his deposition. SET's interrogatories may have warranted a more detailed response as to the substance of Horns' testimony, but I note that SET did not move to compel a more

5

detailed response. Additionally, Collins should have listed Fulwiley in his initial disclosures, as he was listed in his EEOC questionnaire as a witness to the alleged discriminatory conduct. (*See* Dkt. No. 46–22, ¶ 11.) But although SET claims it was surprised by Fulwiley's existence and the substance of some of Horns and Fulwiley's proposed testimony, I note that SET did not attempt to depose either witness after Collins discussed them at his Dec. 22, 2011, deposition. Although SET contends that because the discovery deadline has passed, it no longer has the opportunity to depose these witnesses, the discovery deadline was extended three times following the Collins deposition for various reasons. If SET believed it needed to depose Fulwiley or Horns, there was ample time to raise this issue before filing its dispositive motion. Any failure to disclose the names of these witnesses earlier, then, was harmless. *Cox v. Prime Fin. Mortg. Corp.*, No. Civ.A. 05C4814, 2006 WL 1049948, at *2 (N.D. Ill. April 20, 2006); *see* Fed. R. Civ. P. 26(e)(1), advisory committee's note (noting that a party has "no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition.").

II.

The following facts are taken from the parties' Local Rule 56.1 statements, deposition testimony, and exhibits. Unless otherwise noted, these facts are undisputed. SET is a minority and veteran-owned company that processes flat rolled steel for the automotive industry. Its owner, Sid Taylor, is African American. SET has a plant in Sauk Village whose hourly production and maintenance employees are represented by the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local Union 588 ("the Union").

Collins worked at the SET Sauk Village facility from June 2005 until December 2007. He initially worked as a materials handler, which meant that he was responsible for bending the steel products. At the time of his termination, he was working the 7 a.m. to 3 p.m. shift as a machine operator, which was a promotion from his initial position. Plaintiff's direct supervisor, Bryant, is African American. Mulcahy, the general manager who fired Collins, is white. She worked at the plant from March 2007 through August 2011.

In early 2007, his fellow employees elected Collins to a union steward position. In that role, Collins was familiar with the collective bargaining agreement ("CBA") entered into between

7

SET and the union and dated Aug. 11, 2005. Pursuant to the CBA, employees are entitled to two paid ten-minute breaks and a paid half-hour lunch break. Collins testified that during those breaks, employees were required to punch out if they left the premises. Bryant also testified that employees had to punch out if they left SET while on break, and would be terminated if they failed to do so. The CBA has a grievance procedure that allows employees to file grievances with respect to the meaning of any provision of the CBA. Any employee could file a grievance, culminating in binding arbitration, if he or she thought that the company violated a provision in the CBA.

Union employees, like Collins, were subject to work rules, with which Collins was familiar. Plaintiff received a copy of those rules, and signed an acknowledgment of receipt, in July 2005. The rule at issue here, 1(a), provides that "Falsifying records, including . . . intentionally punching or signing-in the timecard or slips of another employee, having one's own timecard punched or signed in, or otherwise falsely altering the time timecard," is a first-time firing offense.

Collins had a history of disciplinary problems while at SET. In April 2006, he was terminated for job abandonment after he was seen in the parking lot on two occasions meeting with a visitor who had come to the plant during his shift in violation of company rules. As a result of a union grievance, Collins was

reinstated pursuant to the terms of a "Last Chance Agreement," which remained in effect for 60 days and provided that any further performance issues would result in his firing. The agreement, dated April 13, 2006, was not in effect when Mulcahy began working at the company in March 2007. Also on April 13, 2006, Collins was disciplined for being late to work.

On Sept. 8, 2006, Collins was disciplined and demoted from the machine operator position and returned to the material handler position because he damaged a machine. He was subsequently returned to the material handler position. On March 28, 2007, Collins was again disciplined, this time because he had not been staying on the line and had not learned all the job requirements. Plaintiff filed a grievance contesting his demotion, saying he had not been given enough time to be evaluated in the position. He did not at that time complain that he had been subjected to discrimination. Collins testified that the grievance was successful, and he was put back on the line as a machine operator. Mulcahy testified that she gave Collins another opportunity because she had a lot of faith in him. In October 2007, Collins was written up by a supervisor for running into a sheet of steel, which could have damaged the product. Collins submitted a grievance, and Mulcahy pulled the write-up. Collins did not remember being formally disciplined for this incident.

Mulcahy testified that employees not showing up to work, or showing up late, were common infractions at SET. It was common to have write-ups for attendance, violation of work rules, and disciplinary issues. Mulcahy also testified that roughly 50 percent of the material handlers who were promoted to machine operators, as Collins was, were demoted back to the material handler position.

On Dec. 9, 2007, Collins was scheduled to work from 7 a.m. to 3 p.m. He planned to attend a meeting at the union office. Mulcahy testified that Collins called another employee to cover for him; Collins denied doing so. Collins told his supervisor, Bryant, that he was going to a union meeting, and left around 2 p.m. or 2:40 p.m. without clocking out. He went to the union hall for what he described as a 10-minute meeting and returned without clocking in to the plant. Bryant did not authorize Collins to leave work to attend a union meeting while on company time.

Collins testified that he understood that if employees left the SET premises, they were required to punch out. He said that after returning from the union meeting, he worked at SET for another two hours. At some time after 3 p.m., a supervisor saw Collins working on the line and told him to clock out because he was not supposed to be at work.

Mulcahy investigated the incident, and met with Collins, who admitted he did not clock out when he left SET at either 2 p.m. or 2:40 p.m. Collins told Mulcahy that he did not know that he did not get paid for attending to union business. SET does not pay employees for attending union meetings, according to an affidavit by Jackson, the union president. Rather, the union can authorize payment of lost time. Mulcahy concluded that Collins did not actually attend the union meeting on Dec. 9, 2007, based on her discussions with one of the union representatives. Mulcahy determined that Collins did not work from 2 p.m. to 4 p.m. and was attempting to be paid for a period of time he did not work.

Fowler testified that he was a union representative, and he was not aware of a practice in which SET paid union stewards to attend meetings, or overlooked their failure to clock out in order to attend meetings. Michael Moser, shop chairman for the union, similarly averred that there was no such practice. Bryant agreed, although he testified that he had heard rumors of union representatives leaving for meetings without clocking out.

However, in a union grievance filed on behalf of Collins after he was suspended, the union stated that Collins believed he did not have to clock out because of "past practice. The union contends that the company perpetuated this by allowing this to happen in the past with a wink and a nod." (Dkt. No. 55-16, Ex.

P.) And as noted above, Horns and Fulwiley, in their affidavits, averred that it was common practice for hourly employees to leave the SET facility to go to union meetings while still on the clock.

On Dec. 11, 2007, Mulcahy indefinitely suspended Collins for violating Work Rule 1(a) by committing time card fraud. After the union filed its grievance, Mulcahy investigated and determined that the company had no past practice of allowing union stewards or committee persons to attend union meetings on company time. She denied the grievance, writing that after interviewing all the supervisors at SET, not one had ever allowed an employee to attend union meetings on company time. Collins was fired, and the union decided not to arbitrate Collins' grievance.

As noted above, Collins contends that Mulcahy once referred to him as a "nigger" and later told him that his "black ass won't be working here much longer." The first comment was made in March, April, or May of 2007, and the second occurred about a month before his termination. Mulcahy denies making any racist comments, and testified that Collins' race played no role in her decision to terminate his employment. Collins testified that he complained about these comments to union President Jackson, union representatives Fowler and Moser, and fellow employees. Those employees denied receiving such complaints, however. It is

12

undisputed that Collins did not file any grievances related to racial discrimination, or complain of racial discrimination or harassment to anyone in human resources at SET.

Collins filed a charge of discrimination with the EEOC on Jan. 28, 2008, alleging that he was discriminated against because of his race. His intake questionnaire did not include any information about Mulcahy's alleged racist statements.

Collins has identified one similarly situated employee he alleges was treated more favorably than he, Fowler. Fowler, who is white, was disciplined by Mulcahy for failing to clock out in January 2008. The circumstances surrounding this incident are unclear. Fulwiley, as noted above, averred that he saw Fowler come into the building without clocking in and while carrying a McDonald's bag, and reported this to Mulcahy. Fowler testified that he could not recall exactly what occurred, but he may have gone to get lunch or to a doctor's appointment and forgotten to punch out. Mulcahy testified that Fowler left on his break to get food and did not punch out when he left the premises. Fowler was gone for about 10 to 15 minutes, she said.

Whatever the circumstances, Fowler was suspended for the remainder of that day and the next day. Mulcahy testified that Fowler was suspended, and not fired, because the company's past practice had been to allow employees to leave the premises on their paid break without punching out. SET had since changed the

13

rules and required anyone who left to punch out for safety reasons so the company would know who was in the plant in the event of an emergency, Mulcahy testified.  She determined that Fowler made a mistake, but did not intend to defraud the company.[2]

At the time of his suspension, Fowler was a mechanic supervised by the maintenance manager, Dave Jenesie.  Fowler's only prior disciplinary history involved counseling for attendance problems.

### III.

Summary judgment is appropriate where the record shows that there is no genuine dispute as to an issue of material fact. Fed. R. Civ. P. 56(a).  A fact is material if it could affect the outcome of the suit under the governing law, and a dispute is genuine where the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In ruling on summary judgment, courts do not weigh the evidence or determine the truth of the matter, but determine whether a genuine issue of material fact exists that warrants trial.  *Id.* at 249.  In addressing a motion for summary judgment,

---

[2] Whether such a rule change had actually taken place is disputed.  Collins testified that when he worked at SET, employees were required to punch out if they left the premises. Bryant similarly testified that even prior to Mulcahy becoming general manager at SET, he did not know of hourly employees leaving the premises without clocking out.

14

courts must review the record in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Vanasco v. National-Louis Univ.*, 137 F.3d 962, 965 (7th Cir. 1998). This standard is applied with added rigor in employment discrimination cases where intent and credibility are key issues. *Id.* (internal citations omitted).

The moving party bears the burden of establishing the basis for its motion, together with evidence demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party may not rest on mere allegations, but must present specific facts showing that a genuine issue exists for trial. *Big O Tire Dealers, Inc. v. Big O Warehouse*, 741 F.2d 160, 163 (7th Cir. 1984). To support their positions that a genuine issue of material fact does or does not exist, the parties may cite to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, and interrogatory answers, or show that the materials in the record do or do not establish a genuine dispute. Fed. R. Civ. P. 56(c).

IV.

Title VII makes it unlawful for an employer to discharge or discipline an employee on account of the employee's race, among other prohibited grounds. *Coleman v. Donahoe*, 667 F.3d 835,

845 (7th Cir. 2012) (citing 42 U.S.C. § 2000e). The employee may prove discrimination either directly or indirectly. *Id.* (internal citations omitted). Under either method, summary judgment is improper if the plaintiff offers evidence from which an inference of racial discrimination may be drawn. *Vanasco*, 137 F.3d at 965. Collins contends he has brought forth sufficient evidence to proceed under either method. Because I conclude that he is entitled to proceed under the direct method, I need not consider whether he has met the requirements of the indirect method.

Under the direct method, a plaintiff may avoid summary judgment by presenting sufficient evidence, either direct or circumstantial, that discriminatory animus motivated the employer's adverse employment action. *Coleman*, 667 F.3d at 845. Because "smoking gun" evidence of discrimination is rare, *Id.*, plaintiffs often rely on circumstantial evidence that suggests discrimination through a longer chain of inferences. *Henry v. Jones*, 507 F.3d 558, 566 (7th Cir. 2007). Relevant to the instant case, examples of this type of evidence include: suspicious timing, ambiguous oral or written statements, or behavior toward or comments directed at other employees in the protected group; and evidence, whether or not rigorously statistical, that similarly situated employees outside the protected class received systematically better treatment. *Id.*

(internal citations omitted). The Seventh Circuit has held that a plaintiff cannot prove his case with "stray remarks" of a derogatory nature, unless the decisionmaker made them "around the time of the decision" and "in reference to the adverse employment action." *See, e.g., Petts v. Rockledge Furniture LLC,* 534 F.3d 715, 721(7th Cir.2008); *Hemsworth v. Quotesmith.Com,* 476 F.3d 487, 491 (7th Cir. 2007); and *Steinhauer v. DeGolier,* 359 F.3d 481, 487–88 (7th Cir. 2004).

SET contends that assuming Mulcahy made the offensive racial comments described by Collins, Horns, and Fulwiley, which I must do at this stage of the case, they are nothing more than stray comments which cannot be considered direct evidence of discrimination because they did not occur at the time of Collins' termination or in relation to it. I cannot accept this conclusion. Mulcahy's alleged remarks were neither isolated nor unrelated to the adverse employment action, given that the second comment, "your black ass won't be working here much longer," appears on its face to be a threat to fire Collins. Additionally, taken with Mulcahy's first alleged comment, "You niggers act like you all don't know how to run a machine,[3]" the alleged statements "reflect a propensity by the decisionmaker to evaluate employees based on illegal criteria." *Venters v. City*

---

[3] This is how Horns described the exchange. I note that in his deposition, Collins did not describe this statement in detail, but testified that Mulcahy had called him a nigger in the spring before he was fired. Collins Dep. at 140:12-142:16.

17

*of Delphi*, 123 F.3d 956, 973 (7th Cir. 1997). This constitutes direct evidence of discrimination even if it falls short of a "virtual admission of illegality." *Id.* SET points to evidence that Mulcahy denied making these statements, that other employees denied hearing her make racist comments, and that Collins admitted he never filed a grievance related to racial discrimination or complained to anyone in Human Resources about racial discrimination. Def.'s Mem. in Supp. of its Mot. for Summ. J., at 7. These are factors a jury may weigh in determining the credibility of Collins and his witnesses, but they are not a basis for granting summary judgment in what amounts to a credibility dispute. *See Dixon v. City of Racine*, No. 09 CV 481, 2010 WL 2384590, at *7 (E.D. Wis. June 8, 2010) ("[Q]uestions related to the employer's intent and credibility are to be resolved by the jury and not this court.").

SET also argues that it is undisputed that Collins left SET without clocking out, and that this is a firing offense. However, as long as the plaintiff demonstrates a triable issue as to whether discrimination motivated the employment action, he is entitled to proceed to trial. *E.E.O.C. v. RJB Properties, Inc.*, --- F. Supp. 2d ---, 2012 WL 1405728, at *7 (N.D. Ill. April 23,2012) (citing *Diaz v. Kraft Foods Global*, 653 F.3d 582, 588 (7th Cir. 2011)). Under the direct method of proof, there is no requirement that Collins rebut SET's non-discriminatory reason

18

for his firing, although SET may of course present it to the jury in an effort to defeat Collins' claims. *Id.*

In addition to Mulcahy's alleged statements, Collins has proffered evidence that it was common practice for management to look the other way at employees attending union meetings on the clock, that he was only gone for a short period of time, and that he did in fact attend a union meeting. If this is true, and again SET contests these facts, then it raises the question of why Collins was fired for this offense.

Additionally, I note that under the direct method, I must consider evidence that similarly situated employees were treated differently by SET. Collins has presented evidence that although Fowler committed a similar violation of SET's work rules, his punishment was much lighter. SET points to differences that might mitigate Fowler's conduct, arguing for example that Fowler was only gone for a short period of time and that the company had only recent required employees to sign out on their paid breaks. Despite the differences in their conduct, however, the misconduct committed by Collins and Fowler is roughly comparable. *See Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 406-07 (7th Cir. 2007) (holding that "it [is] enough to show 'similar — not identical — conduct.'"); *Brandl v. Superior Air-Ground Ambulance Serv., Inc.*, No. 09 C 6019, 2012 WL 1899321, at * 4 (N.D. Ill. May 18, 2012) ("There can be differences between the plaintiff's

and the proposed comparator's work situation, so long as those differences do not render the comparison effectively useless."). SET makes much of Fowler's less severe prior disciplinary record in comparison to Collins, but SET has not brought forth any evidence that Mulcahy considered Collins' disciplinary history in making the decision to fire Collins. In such a situation, the fact that Fowler had a cleaner disciplinary record than Collins does not render him an inapt comparator. *See Eaton v. Indiana Dep't of Corrects.*, 657 F.3d 551, 558–59 (7th Cir. 2011). In light of all the evidence, then, Collins has presented enough evidence to proceed to trial under the direct method.

V.

For the reasons stated herein, SET's Motion for Summary Judgment (Dkt. No. 44) is denied as to Collins' racial discrimination claim, but granted as to any claim of a hostile work environment, as Collins has abandoned that claim. SET's Motion to Strike Plaintiff's Supporting Affidavits (Dkt. No. 60) is denied.

**ENTER ORDER:**

_____
**Elaine E. Bucklo**
United States District Judge

Date: Sept. 5, 2012